**David A. NOWICKI, Plaintiff-Appellant,**

v.

**Lucy COOPER, Assistant Family Court Commissioner, Milwaukee County, both personally and in her official capacity, Defendant-Appellee.**

No. 93–3100.

United States Court of Appeals, Seventh Circuit.

Submitted April 21, 1995.

Decided June 1, 1995.

David A. Nowicki (submitted), Waukesha, WI, for plaintiff-appellant.

John F. Jorgensen, Office of Corp. Counsel, Milwaukee, WI, for defendant-appellee.

Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.

POSNER, Chief Judge.

A Wisconsin family-court judge, as authorized by Wisconsin law, Wis.Stat. §§ 757.70, 767.19(2); *Forsythe v. Family Court Commissioner*, 131 Wis.2d 322, 388 N.W.2d 580 (1986), refused to permit David Nowicki to attend or tape record two custody hearings before her because he was neither a party to the proceedings nor an attorney for any of the parties. Nowicki claims, in this suit for damages and for injunctive and declaratory relief that he has brought against the judge under 42 U.S.C. § 1983 in both her personal and official capacity, that her refusal violates a number of his federal constitutional rights. Nowicki is proceeding pro se, and the district court, acting on its own initiative, dismissed the complaint (and the suit) for want of federal jurisdiction before any responsive pleading by the defendant. Insofar as the suit sought damages from the judge, the dismissal was of course correct and the judge's error in dismissing a suit on his own initiative without notice to the plaintiff, *Ricketts v. Midwest National Bank*, 874 F.2d 1177, 1183–85 (7th Cir.1989), was harmless, since no amendment to the complaint could have cured the infirmity in the claim of damages against the judge. Her act of which Nowicki complains was judicial, and judges have absolute immunity from suits for damages that complain of their judicial acts. *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Stump v. Spark-*

*man,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). That disposes of the claim for damages against the judge in her personal capacity. The claim for damages against her in her official capacity is barred by the sovereign immunity of her employer, the State of Wisconsin. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Wisconsin Hospital Ass'n v. Reivitz,* 820 F.2d 863, 867 (7th Cir.1987). There is authority that a paid case cannot be dismissed, no matter how manifestly frivolous, before the summons is issued. E.g., *Butler v. Leen,* 4 F.3d 772 (9th Cir.1993) (per curiam). We don't quite see why, *Wartman v. Branch 7,* 510 F.2d 130, 134 (7th Cir.1975) (concurring opinion), but will not pursue the question since a summons did issue.

The dismissal of the injunctive and declaratory portions of the suit is more problematic. The only facts we have to go on are those alleged in the complaint. According to them, Mr. Nowicki is a paralegal and a founder and member of an organization called "Divorced Dads Against Discrimination (DDAD)," which seeks to uphold the rights of fathers. When retained in his capacity as a paralegal by another member of the organization to assist in a custody dispute or other dispute in which a father's rights are in issue, Nowicki charges the member $40 an hour for his services. Randy Weishar and Richard Grabczyk, two members of DDAD, hired Nowicki to assist them in their custody disputes. By excluding Nowicki from their hearings, the judge prevented him from rendering the services that he had contracted to render Weishar and Grabczyk. The consequence was to impose a financial loss on Nowicki and to deprive Weishar and Grabczyk of assistance they need in order to prevail in their custody disputes with their ex-wives. We do not know the status of the custody proceedings. Although Nowicki brought this suit two years ago and the Weishar and Grabczyk custody proceedings had begun at least a year earlier, a custody battle can continue until a child reaches adulthood. For all we know, the proceedings involving Nowicki's clients are still going on.

■ Insofar as the suit seeks relief on *their* behalf, it is plainly improper. Even if the exclusion of Nowicki somehow infringed a federal right of either of his clients, Nowicki cannot enforce the rights of other people as their representative. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561–64, 112 S.Ct. 2130, 2137–38, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982); *United States ex rel. Mosay v. Buffalo Brothers Management, Inc.,* 20 F.3d 739, 742 (7th Cir.1994). And if the *Rooker–Feldman* doctrine applies to interlocutory rulings—an unsettled question, *Hoover v. Wagner,* 47 F.3d 845, 849 (7th Cir.1995)—he cannot ask a lower federal court to review the judgment of a state court. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Allen v. Allen,* 48 F.3d 259, 261 (7th Cir.1995). Were the state a party to the custody proceedings, the suit would also be barred by the *Younger* doctrine. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *Brunken v. Lance,* 807 F.2d 1325, 1330 (7th Cir.1986). But, so far as appears, it is not a party. Conceivably, the suit might also be barred by the doctrine of federal abstention in domestic relations cases, which although traditionally a limitation of the federal diversity jurisdiction, *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), was interpreted in *Allen v. Allen, supra,* 48 F.3d at 261–62, as a general bar to federal courts' adjudicating divorce, alimony, and custody proceedings. But *Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 558 (7th Cir.1986), which *Allen* did not cite, had taken a contrary view.

None of the principles that we have mentioned thus far is a bar to Nowicki's suit insofar as he seeks admittance to custody hearings for personal financial gain. In that respect the suit is no different from a suit by a newspaper to be allowed, on First Amendment grounds, into a closed judicial hearing. Such suits are commonplace. See, e.g., *Press–Enterprise Co. v. Superior Court,* 478

U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *United States v. A.D.,* 28 F.3d 1353 (3d Cir.1994). And even if the custody hearings involving Nowicki's clients are over with (which we do not know), the suit is not moot, because he anticipates further occasions on which he will want to participate in a custody hearing. He alleges that the judge's policy is to close custody hearings to the extent allowed by Wisconsin law. If that is indeed her policy she will exclude him on all future occasions.

It remains unclear just how his federal rights might have been violated by the state judge's action. Suppose an expert witness were excluded by a state judge on state-law grounds from testifying in a case and as a result lost a fee and anticipated losing more fees in future cases before this judge. The witness might have some remedy under state law—in fact Nowicki could have sought, and for all we know may still be able to seek, a writ of prohibition in state court against the judge who excluded him, see Wis.Stat. §§ 781.01 *et seq.; State ex rel. Newspapers, Inc. v. Circuit Court,* 65 Wis.2d 66, 221 N.W.2d 894, 897 (1974); *State ex rel. Storer Broadcasting Co. v. Gorenstein,* 131 Wis.2d 342, 388 N.W.2d 633, 635–36 (App.1986)—but what federal right of the witness's would have been violated?

There are two possibilities, both of which are at least implicit in the complaint. One is that the judge's *policy* (as distinct from an ad hoc ruling in a particular case) arbitrarily deprives Nowicki of his liberty to pursue his occupation as a paralegal, in violation of the due process clause of the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 572–74, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548 (1972); *Bernard v. United Township High School District No. 30,* 5 F.3d 1090, 1092 (7th Cir.1993); *Bigby v. City of Chicago,* 766 F.2d 1053, 1059 (7th Cir. 1985). The second possibility, which relates more to Nowicki's role in DDAD than to his occupation as a paralegal, is that the policy deprives him of the limited right (to which we have already alluded), held implicit in the First Amendment, to observe trials. Besides the cases cited earlier, see *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580

and n. 17, 100 S.Ct. 2814, 2829 and n. 17, 65 L.Ed.2d 973 (1980); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir.1994); *In re Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308–09 (7th Cir.1984).

The first of these theories is highly dubious. Not only is the regulation of proceedings in state court the business of the states unless a challenged regulation contravenes a particular federal right, but also Nowicki's business—the rendering of "paralegal" services *directly to clients* rather than to lawyers—looks like nothing so much as the unauthorized practice of law. One Wisconsin judge has characterized Nowicki's activity in just those terms, precipitating another suit, *Nowicki v. Ullsvick,* No. 94–1409 in this court, where his appeal from the dismissal of that suit is pending. Nowicki's second theory has no obvious infirmity, however, and so his suit is not frivolous, except in the respects discussed at the beginning of this opinion. Dismissal of the suit in its entirety was therefore premature. *Neitzke v. Williams,* 490 U.S. 319, 327 n. 6, 109 S.Ct. 1827, 1832 n. 6, 104 L.Ed.2d 338 (1989); *Gammon v. GC Services Limited Partnership,* 27 F.3d 1254 (7th Cir.1994); *Crowley Cutlery Co. v. United States,* 849 F.2d 273, 276 (7th Cir.1988).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.