BARKETT, Circuit Judge,
specially concurring:
I agree with the majority’s ultimate conclusion that the decision of the district court in this case should be reversed for many of the reasons stated by the majority. I write only because I believe the majority is wrong when it states that “[o]ne cannot allege a constitutional violation by a judge, who was doing precisely what a statute permits him to do, without challenging the constitutionality of the statute under which he was acting.”[1] See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 562 n. 4, 100 S.Ct. 2814, 2820 n. 4, 65 L.Ed.2d 973 (1980) (plurality opinion).
Although the majority recognizes in footnote 9 that “a judge acting pursuant to a state statute is limited by the constraints of the Constitution and may not exercise his discretion under that statute in a unconstitutional fashion,” it nonetheless concludes that the plaintiffs have failed to state a claim. The majority characterizes the plaintiffs’ claim not as a challenge to “Judge Conger’s judgment in deciding to close his courtroom, *1087 but rather the fact that he has the authority to exclude anyone at all.” I believe the plaintiffs in this case are challenging, rather, Judge Conger’s “policy” of summarily closing his courtroom as an unconstitutional exercise of his authority.[2]
In order to ascertain the nature of the plaintiffs’ claim, one must understand the nature of the underlying right supporting such claim. The plaintiffs are seeking the type of procedural protections surrounding the qualified right of access to judicial proceedings guaranteed by the First Amendment, and first articulated by the Supreme Court in Richmond Newspapers.[3] The plaintiffs in both Richmond Newspapers and this ease challenged not the trial court’s ultimate “authority to exclude anyone at all,” but merely the manner in which the judge exercised such authority. In their complaint, Simmons and CCCFC specifically contend that
Judge Conger did not make any order or finding balancing the interest of the public to attend and the interest of the husband to have a closed hearing. Judge Conger made no finding that the denial of public access served an important governmental interest and that there was no less restrictive way to serve that governmental interest.
In fact, the relief sought by Simmons and CCCFC was to enjoin Judge Conger “from excluding members of CCCFC and the general public from court proceedings unless, after notice and hearing, he finds a proper, overriding interest in favor of closure.” This seems to me to be an attack on Judge Conger’s “exercise of his discretionary function,” not a claim that the statutory grant of such discretion is invalid per se. Thus, I believe plaintiffs’ claim that Judge Conger infringed their First Amendment right of access to judicial proceedings states a valid constitutional claim.[4]
Ultimately, although I believe that plaintiffs otherwise stated a valid claim, I do have reservations as to whether a “genuine and present controversy, not merely a possible or conjectural one” exists in this case. See Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 111-13, 57 S.Ct. 96, 97, 81 L.Ed. 70 *1088 (1936). Judge Conger is retired and no longer in a position to injure the plaintiffs or the public by excluding them from court proceedings, and his alleged “past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy.” City of Los Angeles v. Lyons, 461 U.S. 95, 103, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983). Even if Judge Conger’s “successors” are substituted as defendants in an attempt to save this action from mootness, I do not believe that the relief sought — injunctive relief — is warranted in this ease. Injunctive relief against Judge Conger’s successors is inappropriate because the threatened harm is merely speculative, i.e., we would have to assume that the successor judges would impose a similar “policy” of exclusion.[5] Notwithstanding that I think the plaintiffs brought a cognizable constitutional claim under Richmond Newspapers and its progeny, the permanent injunction should be vacated because this case no longer presents a “likelihood of substantial and immediate irreparable injury,” an element requisite to any grant of equitable relief. O’Shea v. Littleton, 414 U.S. 488, 501-03, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974).

. The state statutes in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and the instant case permit, but do not require, trial courts to close court proceedings. If Judge Conger had been mandated by state law to close the divorce proceeding, I would find persuasive the majority's conclusion that "logic dictates that Simmons and CCCFC's challenge in this case is not really to Judge Conger's actions, but rather to the constitutionality of section 12-21-9.”

. The majority implies in footnote 6 that Simmons and CCCFC fail to state a claim because they allege only one incident in which Judge Conger excluded Simmons from the courtroom, which the majority considers as insufficient proof that Judge Conger had a "policy and practice” of exclusion. Alleging a policy or custom, however, is relevant only if the § 1983 claim is brought against a local governmental body. See Arnold v. Board of Education of Escambia County Alabama, 880 F.2d 305, 310 (11th Cir.1989). Municipal accountability is not at issue in this case. If “policy and practice” has any relevancy, it is to the question of whether Judge Conger’s successor is similarly excluding the public from his courtroom, of which no allegation has been made.

. Had we reached the merits of Simmons' and CCCFC's action, we would be called upon to determine whether to extend to civil divorce proceedings the constitutional safeguards surrounding the right of access established in Richmond Newspapers. There the Court found a limited right of access to judicial proceedings, not an absolute right: "[A] trial judge [may], in the interest of the fair administration of justice, impose reasonable limitations on access to a trial.” 448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18. The Court required a balancing of the competing constitutional interests involved — the public's First Amendment interest in open proceedings as against the criminal defendant’s right to a fair trial — and held that ”[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." Id. at 581, 100 S.Ct. at 2829. Simmons and CCCFC are seeking similar relief in this case, arguing that Judge Conger was constitutionally allowed to exclude persons from his courtroom only after conducting a Richmond Newspapers balancing of the interests involved.

. Indeed, this constitutional claim is similar to that presented in Nowicki v. Cooper, 56 F.3d 782 (7th Cir.1995), cert. denied, - U.S. -, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996), in which a paralegal challenged a state family-court judge’s policy of not allowing him to attend or record custody hearings because he was neither a party to the proceedings nor an attorney for either of the parties. The plaintiff claimed that the judge’s actions, although authorized by Wisconsin law, Wis.Stat. §§ 757.70, 767.19(2), violated several federal rights. Nowicki, 56 F.3d at 783. The Seventh Circuit held that to the extent the plaintiff alleged that the judge's "policy deprives him of the limited right, ... held implicit in the First Amendment, to observe trials. ... his suit is not frivolous” and was erroneously and prematurely dismissed by the district court. Id. at 785 (citing Richmond Newspapers, 448 U.S. at 580 & n. 17, 100 S.Ct. at 2829 & n. 17).

. We previously affirmed the dismissal of an action challenging Judge Conger's "policy" of excluding observers from child support hearings because the threatened injury was too speculative, and the case not ripe for adjudication:
[Ajppellants' claims must be based on what they predict will happen as a result of Judge Conger’s policy should they attempt, at some time in the future, to enter Judge Conger’s courtroom during a support hearing. This is plainly the type of hypothetical case that we should avoid deciding. We do not generally decide cases based on a party’s predicted conduct---- [W]e are faced only with an unofficial “policy” announced in an informal setting. We simply cannot know whether Judge Conger will enforce this policy until he actually does so.
Association for Children for Enforcement of Support, Inc. v. Conger, 899 F.2d 1164, 1166 (11th Cir.1990) (citations omitted) (emphasis added). In the present case, it has not even been alleged that the successor judge has a policy of exclusion, much less that there is an impending threat of enforcement of such a policy.