103 F.3d 133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David A. NOWICKI and Robert B. Laird, Plaintiffs-Appellants,
v.
Clair H. VOSS, Defendant-Appellee.
 No. 94-2919.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 16, 1996.[1]
Decided Nov. 20, 1996.
 
 Before CUMMINGS, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 David A. Nowicki is a self-proclaimed reporter for the Divorced Dads Against Discrimination ("DDAD") newsletter and "paralegal" who, for a fee, provides a variety of services on behalf of other DDAD members--including petitioning the courts to speak on their behalf if they are inarticulate. According to Nowicki and Robert Laird, his client and fellow plaintiff-appellant, Laird is "legally inarticulate" despite "the fact that he is a former air force officer, college graduate, and a broker...." (R. 1 at 10, p 30.) On March 14, 1994, Judge Clair Voss, a state circuit court judge in Waukesha County, Wisconsin, refused to let Nowicki participate in or record a hearing concerning a property dispute between Laird and his wife. Nowicki and Laird filed suit pursuant to 42 U.S.C. § 1983. They claim that Judge Voss' actions violated their constitutional rights, federal antitrust laws and the Contracts Clause of the Wisconsin Constitution. We affirm.
 
 
 2
 This is the third appeal involving Nowicki's attempts to provide legal and "para-legal" services for DDAD members in the Wisconsin courts. In Nowicki v. Cooper, 56 F.3d 782, 784 (7th Cir.1995), cert. denied, 116 S.Ct. 753 (1996), this court affirmed the district court's dismissal in part, but remanded two claims--one concerning a due process right to pursue a non-legal profession in the court room, and the other concerning his First Amendment right to attend judicial proceedings. In Nowicki v. Ullsvik, 69 F.3d 1320, 1323 (7th Cir.1995), we affirmed the district court's judgment against a state court judge and an attorney who had asked the court to stop Nowicki from practicing law without a license. Nowicki appears before us again, this time accompanied by Laird, to pursue another variation of his prior suits.
 
 
 3
 According to the complaint, Laird was on the brink of bankruptcy, and therefore could not afford a lawyer. Despite his alleged financial circumstances, he also hoped to purchase a home without his wife attaching "Homestead Rights" to the property. The mortgage company would not finance the purchase if Laird's wife was on the mortgage or title. Laird asked for an "annulment" of the marriage. At a March 14, 1994 hearing concerning the home, Judge Voss refused to allow Nowicki to participate because his activities amounted to the unauthorized practice of law in violation of Wis.Stat. § 757.30. Without Nowicki's assistance, Laird was allegedly unable to effectively present his case at the hearing and lost his chance to purchase the home because the judge refused to grant the annulment order. He also allegedly had to purchase a transcript in order to pursue his case in the Wisconsin and Federal systems because Nowicki had not been allowed to record the session. Neither side has clearly indicated whether Laird's state court litigation has ended, and in light of allegations in the complaint that imply that it is on-going, we will assume that it continues. Cf. Ullsvik, 69 F.3d at 1323; Cooper, 56 F.3d at 784.
 
 
 4
 Judge Voss filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) which the district court granted. The plaintiffs contend that the district court erred by dismissing their complaint without permitting them to amend. However, despite their allegations to the contrary, the record contains no evidence that the plaintiffs ever attempted to amend the complaint. Their ability to amend the complaint as of right ended with the entry of judgment.
 
 
 5
 The plaintiffs' claims for damages under § 1983 against Judge Voss in his official and personal capacities are barred by the Eleventh Amendment and absolute judicial immunity respectively. Cooper, 56 F.3d at 783. Judge Voss stopped Nowicki's participation in order to prevent a violation of § 757.30 in his courtroom, and therefore he is immune pursuant to the "state action" immunity doctrine. Lawline v. American Bar Ass'n, 956 F.2d 1378, 1384 (7th Cir.1992), cert. denied, 114 S.Ct. 551 (1993); see Wis.Stat. § 757.30(1) (authorizing action for contempt if necessary to enforce licensing statute).
 
 
 6
 Nowicki and Laird also requested declaratory relief with respect to their constitutional claims. Such relief is not barred by sovereign or judicial immunity. In Cooper, 56 F.3d at 784, we noted jurisdictional problems due to the Rooker-Feldman doctrine and the "domestic relations" exception to federal jurisdiction. Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity-Trust Co., 263 U.S. 413 (1923). We decline to delve into these jurisdictional issues in this case. "Although jurisdictional issues are normally resolved prior to a determination of the merits, ... we may disregard potentially difficult jurisdictional issues and proceed directly to the merits where there is no practical difference in the outcome." Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir.1996) (citing, inter alia, United States v. Parcel of Land, 928 F.2d 1, 4 (1st Cir.1991) (avoiding jurisdictional issue to affirm denial of Rule 60(b) motion on merits)).
 
 
 7
 Laird claims that § 757.30 of the Wisconsin Code, which prohibits the practice of law without a license, is unconstitutional on its face. The statute defines the practice of law in the following manner:
 
 
 8
 (2) Every person who appears as agent, representative or attorney, for or on behalf of any other person, or any firm, partnership, association or corporation in or before any court of record, court commissioner, or judicial tribunal of the United States, or of any state, or who otherwise, in or out of court, for compensation or pecuniary reward gives professional legal advice not incidental to his or her usual or ordinary business, or renders any legal service for any other person, or any firm, partnership, association or corporation, shall be deemed to be practicing law within the meaning of this section.
 
 
 9
 States have a compelling interest in the practice of professions within their boundaries. Florida Bar v. Went For It, Inc., 115 S.Ct. 2371, 2376 (1995). The legal profession is one of the professions most closely related to the State's power to protect the public, and it plays an important role in the administration of justice. Hoover v. Ronwin, 466 U.S. 558, 569 n. 18 (1984). Since the clients may have difficulty in gauging the relative legal skills of professional representative and the goals of judicial efficiency and economy are enhanced by competent legal representation, legislatures have attempted to assure quality by imposing and enforcing licensing requirements, as well as through other means.
 
 
 10
 Laird claims that § 757.30(2) violates due process because it deprives indigents of the opportunity to hire cheap unlicensed individuals to represent them. Although he describes the problem as one of "overbreadth,"[2] it essentially amounts to a claim that indigents are constitutionally entitled to the assistance of lay advocates to guarantee their access to the court because they cannot afford attorneys. There are many means of providing indigents with adequate access to the courts. This right does not compel Wisconsin to waive its prohibition of the practice of law for compensation without a license as the solution. While there may be extremely limited circumstances that entitle an indigent prisoner to receive the assistance of a lay person,[3] the appellants have not alleged any comparable scenario.
 
 
 11
 Laird argues that § 757.30 violates his First Amendment right to freedom of association by denying litigants the assistance of fellow members at the counsel table in court. Laymen have the First Amendment right of freedom to associate with licensed attorneys to pursue a legal objective, but only if they can show that the deprivation will deprive them of meaningful access to the courts. Lawline, 956 F.2d at 1387. Laird contends that a similar right accrues for legal representation from unlicensed individuals. Since he has not shown that the licensing provision violates the right of access to the courts in the first place, he fails to state a claim.
 
 
 12
 Laird claims that § 757.30 violates equal protection because it deprives pro se individuals from having assistants, while permitting attorneys to have such assistants. The statute itself makes no such distinction. It prohibits any assistants from practicing law without a license, whether they act in court on behalf of an individual or on behalf of a law firm.
 
 
 13
 Nowicki has not demonstrated that § 757.30 is unconstitutional, and thus Judge Voss' order to prevent Nowicki from violating the statute was proper. The real thrust of Nowicki's claim is that Judge Voss' order prevented him from acting as a para-legal and reporter to the extent that they are not prohibited by § 757.30. In this case, Nowicki fails to state a claim.
 
 
 14
 Judge Voss flatly denied Nowicki the opportunity to assist in any capacity. Nowicki contends that the judge's blanket prohibition encompassed a variety of potentially services that a non-lawyer could provide in a courtroom. Cf. Lawline, 956 F.2d at 1386 (" '[T]here are many things that lawyers do ... which are properly also done by others.' ") (citation omitted) (dicta). Therefore, Judge Voss allegedly deprived him of a liberty interest in pursuing a profession. Nowicki's claim is "highly dubious" given that "Nowicki's business--the rendering of para-legal services directly to clients rather than to lawyers--looks like nothing so much as the unauthorized practice of law." Cooper, 56 F.3d at 785. Regardless, unlike Cooper, in which Nowicki had alleged that the judge had a policy of prohibiting such services in all cases before her, id., he makes no such allegations in this case. Nowicki objects to Judge Voss' order because it excludes him from one particular job--the representation of Laird in the annulment action. As such, his claim is not actionable under a suit brought directly under the due process clause.[4] Ullsvik, 69 F.2d at 1325.
 
 
 15
 Nowicki also claims that Judge Voss' decision violated his First Amendment right to attend the proceedings. In Cooper, 56 F.3d at 784-85, we reversed the dismissal of Nowicki's First Amendment claim concerning his total exclusion from the court room. In contrast, Judge Voss allowed Nowicki to attend the proceedings. He just could not record them. This limitation on the First Amendment right to attend judicial proceedings "can withstand constitutional scrutiny so long as it is reasonable and neutral, as with time, place and manner restrictions generally." United States v. Kerlew, 753 F.2d 617, 621 (7th Cir.1985); Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir.1994) (per curiam). Nowicki asserts that Judge Voss' decision was discriminatory, cf. id., but his use of the term is utterly conclusory.[5]
 
 
 16
 Although Nowicki alleged in his complaint that Judge Voss did not provide a specific reason when he told Nowicki to stop recording, he also alleged more generally that the judge refused to allow Nowicki to provide services to Laird in order to prevent the unauthorized practice of law. While Nowicki contends that recording a hearing is an innocent practice in and of itself, we can understand how Judge Voss would find it to be part of a larger scheme to practice law without a license. In the complaint, Nowicki claims that he needed to record the proceedings in part to ensure the accuracy of his reporting for the DDAD newsletter. However he also alleged that in part he wanted to use the recording as his private record and that the court's decision impaired his efficiency in assisting Laird. Prohibiting Nowicki from recording the hearing to avoid the unlicensed practice of law is a neutral, reasonable basis for the court's order. Thus, Nowicki fails to state a claim for a First Amendment claim.
 
 
 17
 The plaintiffs' contention that Judge Voss' decision violated the Contracts Clause of the United States Constitution Art. I, § 10, cl. 1, is meritless. The Contracts Clause applies to legislative acts, not judicial orders. Ullsvik, 69 F.3d at 1325. The pendant claim alleging a violation of the Contracts Clause of the Wisconsin Constitution equally fails to state a claim. Id. at 1326 n. 4.
 
 
 18
 Nowicki's request for the disqualification of the Attorney General of Wisconsin on the basis of vague assertions of conflicts of interest is denied. Ullsvik, 69 F.3d at 1326. He believes that the Attorney General should be prosecuting Judge Voss for antitrust violations, and therefore he should not be defending the judge. As we explained before, immunity bars any such antitrust claim against Judge Voss arising out of the order in Laird's suit.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 After an examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Nowicki has filed a statement requesting oral argument. Upon consideration of that statement, the briefs and the record, the request is denied, and the appeal is submitted on the briefs and the record
 
 
 [2]
 Laird is not arguing that the statute is vaguely worded in a way that makes it difficult to tell whether one is practicing law without a license or, apart from freedom of association or access to the courts, that its prohibition encompasses constitutionally protected conduct. His contention that the licensing requirement violates the rights of individuals who do not want to hire licensed attorneys merely because they want to save money is frivolous
 
 
 [3]
 In Johnson v. Avery, 393 U.S. 483, 490 (1969), the Supreme Court held that prison officials could not prohibit an inmate from receiving the assistance of fellow inmates if the officials otherwise provided no alternative means to help indigent (and often illiterate) prisoners to prepare federal habeas corpus petitions. However, even in Johnson, the Court observed that states could impose reasonable restrictions on such assistance, including "the imposition of punishment for the giving or receipt of consideration in connection with such activities." Id. The Court has recently openly disclaimed any suggestion in its prior access to courts cases that states "must enable the prisoner ... to litigate effectively once in court." Lewis v. Casey, 116 S.Ct. 2174, 2181 (1996); cf. also Murray v. Giarratano, 492 U.S. 1, 7-8 (1989) (holding that there is no federal constitutional right to counsel for indigent prisoners seeking state post-conviction relief)
 
 
 [4]
 We do not address whether Nowicki had a protectable property interest at stake because he has not adequately presented any such argument on appeal. Fed.R.App.P. 28(a)(6)
 
 
 [5]
 Nowicki alleges that the enactment of § 737.50 was motivated by certain discriminatory intentions, but none of these are attributed to the judge himself