899 F.2d 1164
 The ASSOCIATION FOR CHILDREN FOR ENFORCEMENT OF SUPPORT,
INC., and Judy Hayes, Plaintiffs-Appellants,
v.
Paul S. CONGER, Jr., Circuit Judge, 6th Judicial District of
the State of Alabama, Defendant-Appellee.
 No. 89-7121.
 United States Court of Appeals,
Eleventh Circuit.
 May 1, 1990.
 
 Edward Still, Reeves & Still, Birmingham, Ala., for plaintiffs-appellants.
 Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, Ala., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, Chief Judge, CLARK, Circuit Judge, and SMITH*, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 
 1
 The Association for Children for Enforcement of Support, Inc. (ACES) and Judy Hayes appeal the district court's dismissal of this case. Because ACES and Ms. Hayes failed to present a case or controversy or to state a claim upon which relief could be granted, we affirm.I.
 
 
 2
 The district court dismissed this case on the pleadings; therefore, we must accept as true the facts alleged in the appellants' complaint. It contains the following allegations:
 
 
 3
 ACES is a nonprofit corporation organized under the laws of Ohio but with over 300 members in Alabama and over 100 members in Tuscaloosa, Alabama. One of ACES's operations is a court-monitoring program, through which ACES seeks to ascertain whether child-support laws are being properly enforced by the courts. As part of this program, ACES members attend as many child-support hearings as possible.
 
 
 4
 From February 27, 1987 to January 15, 1988, Alabama Circuit Court Judge Paul S. Conger, Jr., of the Sixth Judicial District, and appellee herein, allowed one observer to attend each case involving child support. On January 15, 1988, Judge Conger held a support hearing involving Mrs. Spangler, who is also a member of ACES. Ms. Hayes, President of ACES of Tuscaloosa, attempted to attend the proceedings with Mrs. Spangler, but Mr. Spangler's attorney informed Ms. Hayes that she could not enter the courtroom. After the hearing, Judge Conger informed Ms. Hayes that he would no longer allow any observers, including ACES members, at child-support hearings. ACES attempted to settle the matter informally with Judge Conger, but to no avail.
 
 
 5
 On August 23, 1988, ACES and Ms. Hayes filed a complaint in federal district court, alleging that Judge Conger's policy violated their right to attend judicial proceedings, as guaranteed by the first and fourteenth amendments. Judge Conger moved the court either to abstain from deciding the case or to dismiss it for failure to state a claim upon which relief could be granted. The district court granted Judge Conger's motion, holding that the constitutional issues could be avoided by permitting Alabama courts to construe the ostensible basis of authority for Judge Conger's policy: Ala.Code Sec. 12-21-9 (1975). Citing Railroad Commission v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the district court abstained from entertaining the case and dismissed the case without prejudice. We affirm on other grounds.
 
 II.
 
 6
 Although we find several reasons for dismissing this case, we think that the district court improperly based its dismissal on Pullman abstention. The Pullman question never should have been reached because appellants have not alleged facts sufficient to constitute a case or controversy, as required by article III of the Constitution, or to state a claim upon which relief can be granted. Appellants' allegations fail article III's case or controversy requirement on two counts: first, the case is not ripe for judicial determination, and second, the appellants do not have standing. We address the ripeness and standing questions in that order.
 
 
 7
 It is axiomatic that federal courts should avoid premature adjudication of abstract or hypothetical disputes. See Abbott Labs. v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). To determine whether a case is ripe for adjudication, we must look at two factors: " 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " See Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting Abbott, 387 U.S. at 149, 87 S.Ct. at 1515).
 
 
 8
 This case is clearly not fit for judicial decision. Even accepting all of the appellants' allegations as true, we can find no allegation of conduct on the part of the appellee, Judge Conger, that resulted in the purported deprivation of the appellants' first and fourteenth amendment rights. Ms. Hayes was not excluded from the hearing by Judge Conger; rather, the complaint alleges only that a third party, Mr. Spangler's attorney, told Ms. Hayes that she could not enter the courtroom. There is no indication that Judge Conger ordered the courtroom cleared or was in any way responsible for the conduct of Mr. Spangler's attorney.
 
 
 9
 Thus, appellants' claims must be based on what they predict will happen as a result of Judge Conger's policy should they attempt, at some time in the future, to enter Judge Conger's courtroom during a support hearing. This is plainly the type of hypothetical case that we should avoid deciding. We do not generally decide cases based on a party's predicted conduct. Of course, "[i]f the injury is certainly impending, that is enough." Rail Reorganization Act Cases, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974) (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)). In this case, however, we are faced only with an unofficial "policy" announced in an informal setting. We simply cannot know whether Judge Conger will enforce this policy until he actually does so.
 
 
 10
 Furthermore, waiting to adjudicate the appellants' constitutional claims until Judge Conger actually excludes the appellants from support hearings will not place a substantial burden on the parties. In fact, given the tenuous nature of a fourteenth amendment claim based on the conduct of a private party, see infra, at page 1166, requiring the appellants to wait until Judge Conger excludes them from the courtroom saves all of the parties the expense of prosecuting and defending a frivolous claim. Because this case is not yet fit for judicial determination, and because withholding consideration of the case will not create a hardship for the parties, we think that this case is not ripe and should be dismissed.
 
 
 11
 If the appellants were instead to point to the attorney's conduct as the source of the constitutional violation, they would lack article III standing to bring this cause of action against Judge Conger. Without completely immersing ourselves in the bog of article III standing, we simply note that one of the requirements of standing, traceability, is not present in this case. As the Supreme Court said in Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the plaintiff must show that "the asserted injury [was] the consequence of the defendants' actions, or that prospective relief will remove the harm." Id. at 505, 95 S.Ct. at 2208. The appellants in this case have not made such a showing. According to the appellants, the injury resulted not from Judge Conger's conduct, but from the conduct of an independent third party. Moreover, none of the appellants' allegations allow us to conclude that prospective relief (i.e., restraining Judge Conger) will prevent such conduct by an independent third party as occurred in this case.
 
 
 12
 Finally, we note that even if appellants had standing, we would affirm the district court's dismissal because appellants failed to allege a claim upon which relief could be granted. We reiterate that the appellants complain of an injury that resulted from the conduct of a private attorney, not from the conduct of Judge Conger. The appellants' constitutional claim is based on the first amendment as applied to the states through the fourteenth amendment, but the Supreme Court has repeatedly stated that private action is immune from the restrictions of the fourteenth amendment. See Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). By complaining of a purported fourteenth amendment violation resulting from private conduct, the appellants have failed to state a claim upon which relief can be granted.
 
 III.
 
 13
 For the foregoing reasons, we affirm the order of the district court dismissing this case.
 
 
 14
 AFFIRMED.
 
 
 15
 CLARK, Circuit Judge, dissenting.
 
 
 16
 I dissent. The majority holds that the complaint demonstrates that "first, the case is not ripe for judicial determination, and second, the appellants do not have standing." Then the majority adds that in any event the complaint fails to allege a claim upon which relief could be granted. The majority reads the complaint in an unimaginative hypertechnical sense that defies understanding in this day of notice pleading.
 
 
 17
 The statement of facts verbatim are as follows:
 
 
 18
 7. From 27 February 1987 to 15 January 1988, members of ACES attended child support hearings before Judge Conger. At that time Judge Conger allowed one observer per case.
 
 
 19
 8. On 15 January 1988, Judge Conger held a support hearing in Spangler v. Spangler. Mrs. Spangler, one of the parties to the proceeding, is a member of ACES.
 
 
 20
 9. Plaintiff Judy Hayes, President of ACES of Tuscaloosa, attempted to enter the proceedings with Mrs. Spangler, but was told by an attorney for Mr. Spangler she could not enter the courtroom.
 
 
 21
 10. On 15 January 1988, after the hearing in Spangler v. Spangler, Judge Conger informed Ms. Hayes that it is his policy to close child support hearing and that ACES members would no longer be allowed access to proceedings in his court.
 
 
 22
 11. Judge Conger does not make a finding that each particular hearing should be closed, but has implemented a blanket policy of closure for all child support hearings.
 
 
 23
 12. ACES members presently appear as parties before Judge Conger for child support hearings and other matters.
 
 
 24
 13. ACES has been frustrated in one of its corporate purposes and is threatened with being further frustrated, by the defendant's policy and practices in its efforts to obtain access to court proceedings. ACES has had to devote significant resources to counteract the defendant's actions.
 
 
 25
 14. The defendant's actions as described herein were taken under color of state law.
 
 
 26
 15. ACES has attempted to settle this matter with Judge Conger on an informal basis, but Judge Conger has refused to change his policy.
 
 
 27
 Complaint at 3-4.
 
 The basis for the majority's holding is:
 
 28
 This case is clearly not fit for judicial decision. Even accepting all of the appellants' allegations as true, we can find no allegation of conduct on the part of the appellee, Judge Conger, that resulted in the purported deprivation of the appellants' first and fourteenth amendment rights. Ms. Hayes was not excluded from the hearing by Judge Conger; rather, the complaint alleges only that a third party, Mr. Spangler's attorney, told Ms. Hayes that she could not enter the courtroom. There is no indication that Judge Conger ordered the courtroom cleared or in any way was responsible for the conduct of Mr. Spangler's attorney.
 
 
 29
 Thus, appellants' claims must be based on what they predict will happen as a result of Judge Conger's policy should they attempt, at some time in the future, to enter Judge Conger's courtroom during a support hearing. This is plainly the type of hypothetical case that we should avoid deciding. We do not generally decide cases based on a party's predicted conduct. Of course, "[i]f the injury is certainly impending, that is enough." Rail Reorganization Act Cases, 419 U.S. 102, 143, 95 S.Ct. 335, 358 [42 L.Ed.2d 320] (1974) (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 663 [67 L.Ed. 1117] (1923)). In this case, however, we are faced only with an unofficial "policy" announced in an informal setting. We simply cannot know whether Judge Conger will enforce this policy until he actually does so.
 
 
 30
 Maj. op. at pp. 1165-1166.
 
 
 31
 On the subject of standing, the majority states:
 
 
 32
 If the appellants were instead to point to the attorney's conduct as the source of the constitutional violation, they would lack article III standing to bring this cause of action against Judge Conger.... According to the appellants, the injury resulted not from Judge Conger's conduct, but from the conduct of an independent third party.
 
 
 33
 Maj. op. at p. 1166.
 
 
 34
 In the holding that the complaint fails to state a cause of action, the opinion states:
 
 
 35
 Finally, we note that even if appellants had standing, we would affirm the district court's dismissal because appellants failed to allege a claim upon which relief could be granted. We reiterate that the appellants complain of an injury that resulted from the conduct of a private attorney, not from the conduct of Judge Conger. The appellants' constitutional claim is based on the first amendment as applied to the states through the fourteenth amendment, but the Supreme Court has repeatedly stated that private action is immune from the restrictions of the fourteenth amendment. See Jackson v. Metropolitan Edison Co., 419 U.S.. 345, 349, 95 S.Ct. 449, 453 [42 L.Ed.2d 477] (1974). By complaining of a purported fourteenth amendment violation resulting from private conduct, the appellants have failed to state a claim upon which relief can be granted.
 
 
 36
 Maj. op. at p. 1166.
 
 
 37
 It is obvious that the majority in its three holdings has twisted the meaning of the complaint to allege that the person who prevented plaintiffs' representatives from entering the courtroom was the attorney for Mr. Spangler and not the judge. This interpretation fails to comprehend the clear meaning of those parts of the complaint I have emphasized. The majority ignores the fact that judges in custody hearings normally do not have bailiffs and that Mr. Spangler's attorney clearly was acting upon a request from Judge Conger. It is common sense that attorneys do not take it upon themselves to decide who does and who does not enter courtrooms.
 
 
 38
 The plaintiffs in this case "seek declaratory and injunctive relief from defendant's [Judge Conger's] exclusion policy." The majority sends them back to Judge Conger who clearly has stated his intentions on this issue. Cf. Boston Teachers Union v. Edgar, 787 F.2d 12, 18 (1st Cir.1986) (unnecessary for party to subject oneself to contempt in order to challenge prior restraint of interest protected by First Amendment).
 
 
 39
 Finally, I note that the majority opinion does not resolve much of anything. The implication of the opinion is that if the plaintiffs had alleged that Mr. Spangler's attorney was speaking on the instructions of Judge Conger, they would have alleged facts that meet the case and controversy requirements and have stated a claim for relief. On remand, the plaintiffs can amend the complaint (or file a new one since the dismissal was without prejudice) and allege that Judge Conger did actually close the Spangler hearing before it started. The district court probably would follow its original decision and dismiss the case on abstention grounds. The plaintiffs could then file the same appeal that they filed previously. Thus, we would again be faced with the same issues that were argued in this appeal. The parties, however, will suffer the cost and the delay associated with the majority's decision.
 
 
 40
 I dissent.
 
 
 
 *
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation