United States Court of Appeals,

Eleventh Circuit.

No. 94-6808.

Glynnie B. SIMMONS, Concerned Citizens for a Caring Family Court, Inc., Plaintiff-Appellees,

v.

Paul S. CONGER, Jr., in his individual capacity and as Circuit Judge, 6th Judicial District, of the State of Alabama, Defendant-Appellant.

July 3, 1996.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV91-C-2220-W), U.W. Clemon, Judge.

Before BIRCH and BARKETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

This is an appeal by a former circuit court judge in Alabama from the issuance of a permanent injunction against him, as well as his successors in office, permanently enjoining them from excluding members of the public from any divorce trial convened in the Sixth Judicial Circuit in Alabama, absent a prior judicial determination that their public interest in a particular trial is outweighed by a specifically identified compelling state interest. The district court also awarded the plaintiffs one hundred dollars in nominal damages against the state court judge in both his individual and official capacities. For the reasons that follow, we REVERSE the damages judgment, VACATE the permanent injunction, and REMAND with instructions to enter judgment for the state court judge.

I. BACKGROUND

Concerned Citizens for a Caring Family Court, Inc. ("CCCFC"), one of the named plaintiffs in this case, was organized as a

nonprofit organization under Alabama law and was incorporated in June of 1990; plaintiff Glynnie B. Simmons is one of the founders of CCCFC. Judge Paul S. Conger, Jr., the defendant, was an Alabama Circuit Court Judge in the Sixth Judicial District in Tuscaloosa County until January 1995, at which time his term of office ended.[1] Judge Conger's primary duties were as a domestic relations and juvenile court judge, although he had the general power of an Alabama circuit judge to hear other matters assigned to him. All domestic relations cases in Alabama are nonjury and, as a general matter, juvenile proceedings before the family court are closed to spectators. *See* Ala.Code § 12-15-65(a) (1995).

Some background information on CCCFC is helpful to place the events at issue in this case in the proper context. CCCFC allegedly was formed "to focus attention on the laws and procedures governing the Juvenile and Family Courts and to promote constructive change to enable the residents to be served by a judicial system that is fair and just in its decisions and efficient and economical in its operations." R1-11, Exh. E at 1. Most, if not all, of the founding principals in CCCFC had been litigants in Judge Conger's court or had a child or close relative who had been a litigant in Judge Conger's court. The record indicates that these individuals were unhappy about the outcome of their proceedings and generally disapproved of his decisions and his courtroom demeanor.

---

[1]Judge Conger was first elected in 1982 and was succeeded in 1995 by Judge Herschel T. Hamner. This fact is noteworthy because the district court's permanent injunction runs against Judge Conger and his "successors in office and responsibilities." R1-24-1.

Simmons testified at trial that her grievance with Judge Conger was personal and stemmed from her disagreement with the Judge Conger's decision in a case involving her daughter. [2] In order to achieve their stated goals, CCCFC operated what Simmons referred to as a "court monitoring program." R2-30-53. As part of this program, CCCFC members went to court to lend "moral support" to family court litigants, particularly first-time litigants. *Id.* at 54. Interestingly, none of the "information" that allegedly was collected in these monitoring sessions was ever written down, and Judge Conger's court was the only one that was ever monitored. Not only did CCCFC monitor Judge Conger's court, but also they initiated proceedings against him before both the Alabama Judicial Inquiry Commission and the Alabama Court of the Judiciary; their complaints were based on his rulings, courtroom demeanor, and alleged practice of closing certain family court hearings to the public. Both of these actions were dismissed as being without merit.[3] Nonetheless, they helped further the considerable

_____

[2]Two other founding members of CCCFC testified at the bench trial about their personal grievances with Judge Conger. Roselyn Jordan stated that she was "mad as hell at Paul Conger" as a result of his decision in her domestic relations case involving her former husband's abuse of her daughter. R2-30-86. Fay Price testified that she had a grievance with Judge Conger concerning how her case before him was resolved. R2-30-22. Price also testified that she backed Judge Conger's political opponent in the election due to her personal grievance with Judge Conger. *Id.* at 23-24.

[3]This is not to say that no harm occurred. Simmons testified that CCCFC and its followers went by caravan to Montgomery, Alabama, to present their petition to the Judicial Inquiry Commission. R2-30-71. In addition, she testified that CCCFC issued a press release, setting forth their unsubstantiated charges against Judge Conger, prior to any hearing being held on the merits of their allegations. *Id.* Roselyn Jordan testified that she and some other CCCFC members went to New York and

animosity that already existed between Judge Conger and the members of CCCFC.[4]

The conduct at issue in this case occurred on April 15, 1991, during a hearing that Judge Conger held in a divorce and child custody case, *Gosa v. Gosa,* Civil Action No. DR90-374.  Simmons attended this hearing as a spectator and sat through the morning session without incident.[5]  Upon resumption of the hearing after lunch, counsel for Wilmon Gosa addressed the Court:

> MR. NOLEN [counsel for Mr. Gosa]:  Your Honor, if I may at this point, the great majority of the allegations that we have heard this morning were not in the pleadings and are certainly surprising to us.  In light of that, we would ask that only the parties and counsel and whatever witness is testifying be allowed in court at this time.
>
> THE COURT:  You are asking for Mrs. Simmons to be excused?
>
> MR. NOLEN:  Yes, sir, we are.
>
> THE COURT:  Mrs. Simmons, at the request of the Defendant, I will ask you to please excuse yourself.

---

appeared on an episode of the "Geraldo" show about bad judges and bad decisions;  on the show, Jordan spoke about her personal experience in a domestic relations matter before Judge Conger.

[4]In fact, this is the second time that we have heard an appeal in a case involving Judge Conger.  An advocacy group, known as the Association for Children for Enforcement of Support, Inc. ("ACES"), brought the first case based on an incident in which a lawyer for a party told an ACES member that she could not observe a child custody proceeding before Judge Conger.  *See Association for Children for Enforcement of Support, Inc. v. Conger,* 899 F.2d 1164 (11th Cir.1990) (affirming dismissal of case because (1) dispute was not ripe, given that exclusion was done by a lawyer and not the judge, (2) plaintiffs lacked standing, and (3) plaintiffs did not state a cause of action).  Although ACES and CCCFC are separate organizations, and there is little in the record regarding overlap in membership between the organizations, the groups both monitored Judge Conger's courtroom, and both were actively opposed to Judge Conger politically.

[5]Simmons was the only spectator at the hearing.

MRS. SIMMONS: You are asking me to leave?

THE COURT: Yes, ma'am, I sure am.

MRS. SIMMONS: I want that on the record that you are—

THE COURT: The counsel for the Defendant, Mr. Richard Nolen, has asked that Mrs. Simmons, who is a member of Concerned Citizens, be asked to leave this courtroom because his client objects to her presence in the courtroom.

MRS. SIMMONS: I am just monitoring the Court because every citizen has a right to sit in the court.

MR. NOLEN: Well, ma'am, on behalf of my client, I would like to ask you to leave.

MRS. SIMMONS: I will leave if the Judge makes it official. I will not leave on your asking.

THE COURT: Yes, ma'am, I am asking you to leave. At the request of the Defendant, I am asking you to leave, please, ma'am.

MRS. SIMMONS: I would like to have a notarized statement to that effect. I will pick it up next week.

THE COURT: Yes ma'am. We will see about that.

(Whereupon, Mrs. Simmons exits the courtroom).

R1-11, Exh. A at 4-6.

Simmons claims that she was in court that day to lend moral support to Marcia Gosa. Significantly, after Simmons left the courtroom, Marcia Gosa's lawyer stated that neither he nor his client had any problem with her being asked to leave the courtroom. Therefore, both sides were in favor of Simmons being removed from the courtroom for the afternoon session. The record indicates that Wilmon Gosa's lawyer likely wanted to have Simmons removed because Wilmon Gosa, who was on the witness stand at the time, began being questioned on cross-examination about alleged extramarital conduct and children possibly born outside of the marriage. Judge Conger testified at trial that "[i]f Mr. Gosa felt that the testimony

there might threaten his job, economically that has a direct impact on his ability to support his children." R2-30-138.

On September 19, 1991, Simmons and CCCFC filed their complaint in district court in this case, in which they sought declaratory and injunctive relief under 42 U.S.C. § 1983. Simmons claimed that her exclusion from court in the *Gosa* proceeding, as well as what she called Judge Conger's "policy and practice[6] of excluding members of CCCFC and the general public from proceedings in his court," deprived her and CCCFC of their First and Fourteenth Amendment rights of access to judicial proceedings and association. R1-1-4.

Judge Conger answered that his exclusion of Simmons was done pursuant to section 12-21-9 of the Alabama Code, which states:

> In all civil cases sounding in damages involving the question of rape, assault with intent to ravish, seduction, divorce or any other case where the evidence is vulgar, obscene or related to the improper acts of the sexes and tends to debauch the morals of the young, *the presiding judge shall have the right, in his discretion and on his own motion, or on motion of plaintiffs or defendants or their attorneys, to hear and try the case after clearing the courtroom of all or any portion of the audience whose presence is not necessary.*

Ala.Code § 12-21-9 (1995) (emphasis added). The case proceeded to

---

[6]Interestingly, Simmons admits that the *Gosa* case is the only instance in which she was asked to leave Judge Conger's courtroom. R2-30-75. We fail to see how this one incident constitutes what Simmons and CCCFC characterize in their complaint as Judge Conger's "policy and practice" of exclusion. R1-1-4. The record indicates that other members of CCCFC were excluded from Judge Conger's courtroom on other occasions, but those exclusions occurred either because the CCCFC members were witnesses affected by the exclusionary rule, or because the proceedings involved a juvenile and were closed as a matter of Alabama law. We view these latter instances as wholly unrelated to the incident complained of in this case, and therefore they do not aid the plaintiffs in establishing proof of any "policy or practice."

trial, and a one-day bench trial was held in the Northern District of Alabama on December 2, 1992.  Almost twenty months later, the district court issued its Memorandum Opinion and Final Judgment and Permanent Injunction, both dated July 29, 1994.  Although the district court expressly stated that it was avoiding the constitutional issues presented, it nonetheless found that Judge Conger had "abused his discretion under federal common law and Title 12-21-9."  R1-23-9.  Based on this finding, the district court permanently enjoined Judge Conger and his successors "from excluding plaintiffs and members of the public from any divorce trial convened in the Sixth Judicial Circuit of Alabama in the absence of a prior judicial determination, based on factual findings, that their interests in attending the trials are outweighed by a specifically identified compelling state interest."  R1-24-1-2.

In addition, the district court awarded Simmons and CCCFC one hundred dollars in nominal damages, recoverable from Judge Conger "individually and as Circuit Judge of the Sixth Judicial District of the State of Alabama."  *Id.* at 2.  On appeal, Judge Conger raises three issues, whether:  (1) federal common law can be created by a district judge to control attendance and procedures in a state court when there is a state statute that governs, and the court avoids addressing the federal constitutional issues;  (2) the district court should have abstained from deciding a matter involving the discretionary decisions of a state court judge acting pursuant to a state statute, the constitutionality of which the plaintiffs did not challenge;  and (3) this matter should be

certified to the Alabama Supreme Court, in order for it to interpret section 12-21-9 of the Alabama Code, which guided Judge Conger's conduct in this case.

## II. DISCUSSION

The district court awarded both nominal damages and injunctive relief; these two issues will be addressed separately. On appeal, we review the district court's conclusions of law *de novo*. *Worthington v. United States,* 21 F.3d 399, 400 (11th Cir.1994). The district court's application of the law to the facts also is subject to *de novo* review. *Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.,* 3 F.3d 1472, 1475 (11th Cir.1993), *cert. denied,* --- U.S. ----, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994).

### A. *Nominal Damages*

"We review a district court's award of damages under a clearly erroneous standard." *Davis v. Marsh,* 807 F.2d 908, 913 (11th Cir.1987) (per curiam). In this case, the district court ordered Judge Conger to pay one hundred dollars in nominal damages. The damages were recoverable against him both in his individual and official capacities. The district court clearly erred in awarding damages against Judge Conger in his individual capacity because he is entitled to absolute judicial immunity from damages in this section 1983 case. It also erred in awarding damages against Judge Conger in his official capacity, given that such relief is barred by the Eleventh Amendment.

The Supreme Court has set forth a two-part test for determining when a judge is entitled to immunity from money damages liability when sued under section 1983. *Stump v. Sparkman,* 435

U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The first part of the test is whether the judge dealt with the plaintiff in a judicial capacity. *Id.* at 362, 98 S.Ct. at 1107. If the judge was not dealing with the plaintiff in a judicial capacity, then there is no immunity. If the judge was dealing with the plaintiff in his judicial capacity, however, the second part of the test is whether the judge acted in the " "clear absence of all jurisdiction.' " *Id.* at 357, 98 S.Ct. at 1105 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872).

In this case, it is clear that Judge Conger was dealing with Simmons in his judicial capacity. The incident at issue occurred while Judge Conger was hearing a domestic relations case. He excluded Simmons from his courtroom during a proceeding that was properly before him, and he was acting in his official capacity in excluding her. Therefore, Judge Conger's actions satisfy the first part of the test for determining the applicability of judicial immunity. *See Rolleston v. Eldridge,* 848 F.2d 163, 164 (11th Cir.1988); *Harris v. Deveaux,* 780 F.2d 911, 914 (11th Cir.1986).

Furthermore, Judge Conger satisfies the second part of the *Stump* test. He clearly had jurisdiction over the *Gosa* matter, and there is no allegation to the contrary. Therefore, because Judge Conger's conduct at the *Gosa* hearing satisfies both prongs of the *Stump* test for judicial immunity from damages liability under section 1983, the district court's damages judgment against him in his individual capacity is reversed.[7] As for the damages awarded

---

[7]Aside from the legal error on the judicial immunity issue, we are troubled that the court awarded damages in this case, because all that the plaintiffs sought was declaratory and

against Judge Conger in his official capacity, this relief is barred by the sovereign immunity of his then employer, the State of Alabama. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and, "[a]s such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (holding in a damages action that neither a state nor its officials acting in their official capacities are "persons" subject to suit under section 1983). Therefore, the award of damages against Judge Conger in his official capacity is also reversed.

B. *Permanent Injunction*

On appeal, the standard of review for the grant of a permanent injunction is abuse of discretion. *Centel Cable Television Co. v. Thos. J. White Dev. Corp.,* 902 F.2d 905, 910 (11th Cir.1990). Unlike a damages suit under section 1983, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen,* 466 U.S. 522, 541-42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984). Simply because prospective injunctive relief is available against a judge in a section 1983 action, however, does not mean that such equitable relief is appropriate.

In this case, Simmons and CCCFC allege that their First Amendment rights of access to judicial proceedings and association, as applied to the states through the Fourteenth Amendment, were

injunctive relief. There is no prayer for damages in their complaint.

violated when Judge Conger excluded Simmons from the *Gosa* hearing. Judge Conger, in his answer to this lawsuit, explained that he was exercising his discretion under Alabama Code § 12-21-9, which by its terms permits him to do exactly what he did in this case. Since he was acting pursuant to a state statute, logic dictates that Simmons and CCCFC's challenge in this case is not really to Judge Conger's actions, but rather to the constitutionality of section 12-21-9.

Simmons and CCCFC, however, repeatedly have emphasized, both in their briefs and at oral argument, that they are not challenging the constitutionality of the statute. Rather, they explicitly state that they are challenging Judge Conger's actions in this specific case, which they allege violated their First Amendment rights. Since Judge Conger was acting pursuant to a presumptively constitutional statute, Simmons and CCCFC fail to state a claim upon which relief can be granted.[8] One cannot allege a constitutional violation by a judge, who was doing precisely what a statute permits him to do, without challenging the constitutionality of the statute under which he was acting.[9] This

---

[8]Given our decision, we need not address the abstention and certification issues raised by Judge Conger.

[9]We do not disagree with Judge Barkett's reading of *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), as stating, in general terms, that a judge acting pursuant to a state statute is limited by the constraints of the Constitution and may not exercise his discretion under that statute in a unconstitutional fashion. *See Richmond Newspapers,* 448 U.S. at 562 n. 4, 100 S.Ct. at 2820 n. 4. Plaintiffs therefore must allege either (1) that the state statute is unconstitutional or (2) that a particular judge's actions pursuant to that statute violated the limits placed upon him by the Constitution. In this case, Simmons and CCCFC assert that they are not challenging the constitutionality of the state

leads us to conclude that the district court abused its discretion in entering a permanent injunction against Judge Conger and his successors.[10]  Therefore, the permanent injunction entered by the district court is vacated, and the district court is instructed on remand to enter judgment for Judge Conger on this claim.

## III. CONCLUSION

The district court erred in awarding nominal damages against Judge Conger in his individual capacity because he is entitled to judicial immunity from money damages liability in this section 1983 case.  In addition, the district court erred in awarding nominal damages against Judge Conger in his official capacity because that relief is barred by the Eleventh Amendment.  Lastly, the district court abused its discretion in entering a permanent injunction, regarding the exclusion of the public from divorce trials, against Judge Conger and his successors.  Therefore, the damages judgment

---

statute.  However, they do not allege that Judge Conger's actions constituted an unconstitutional exercise of authority *under the state statute.*  What they challenge is not Judge Conger's judgment in deciding to close his courtroom, but rather the fact that he has the authority to exclude anyone at all.  This challenge is an attack not on the judge's exercise of his discretionary function, but rather on the underlying statute that affords him his discretion.  Given that Simmons and CCCFC expressly deny that they are making such a challenge, and that they have not alleged that Judge Conger's actions constituted an unconstitutional exercise of his authority under the statute, they have failed to state a valid claim.

[10]We need not address fully the reasoning employed by the district court in granting the injunction.  In its memorandum opinion, the district court states that "[w]ithout reaching the constitutional issue, this Court holds that the exclusion violates federally protected common law rights."  R1-23-1.  Since the only claims that Simmons and CCCFC make are constitutional claims, it is puzzling that the district court could avoid addressing them and still find that they were entitled to relief.

is REVERSED, the permanent injunction is VACATED, and the case is REMANDED to the district court with instructions to enter judgment for Judge Conger.

BARKETT, Circuit Judge, specially concurring:

I agree with the majority's ultimate conclusion that the decision of the district court in this case should be reversed for many of the reasons stated by the majority. I write only because I believe the majority is wrong when it states that "[o]ne cannot allege a constitutional violation by a judge, who was doing precisely what a statute permits him to do, without challenging the constitutionality of the statute under which he was acting."[1] *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 562 n. 4, 100 S.Ct. 2814, 2820 n. 4, 65 L.Ed.2d 973 (1980) (plurality opinion).

Although the majority recognizes in footnote 9 that "a judge acting pursuant to a state statute is limited by the constraints of the Constitution and may not exercise his discretion under that statute in a unconstitutional fashion," it nonetheless concludes that the plaintiffs have failed to state a claim. The majority characterizes the plaintiffs' claim not as a challenge to "Judge Conger's judgment in deciding to close his courtroom, but rather the fact that he has the authority to exclude anyone at all." I believe the plaintiffs in this case are challenging, rather, Judge

---

[1]The state statutes in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and the instant case permit, but do not require, trial courts to close court proceedings. If Judge Conger had been mandated by state law to close the divorce proceeding, I would find persuasive the majority's conclusion that "logic dictates that Simmons and CCCFC's challenge in this case is not really to Judge Conger's actions, but rather to the constitutionality of section 12-21-9."

Conger's "policy" of *summarily* closing his courtroom as an *unconstitutional exercise* of his authority.[2]

In order to ascertain the nature of the plaintiffs' claim, one must understand the nature of the underlying right supporting such claim. The plaintiffs are seeking the type of procedural protections surrounding the *qualified* right of access to judicial proceedings guaranteed by the First Amendment, and first articulated by the Supreme Court in *Richmond Newspapers*.[3] The plaintiffs in both *Richmond Newspapers* and this case challenged not the trial court's ultimate "authority to exclude anyone at all," but merely the manner in which the judge exercised such authority.

---

[2]The majority implies in footnote 6 that Simmons and CCCFC fail to state a claim because they allege only one incident in which Judge Conger excluded Simmons from the courtroom, which the majority considers as insufficient proof that Judge Conger had a "policy and practice" of exclusion. Alleging a policy or custom, however, is relevant only if the § 1983 claim is brought against a local governmental body. *See Arnold v. Board of Education of Escambia County Alabama,* 880 F.2d 305, 310 (11th Cir.1989). Municipal accountability is not at issue in this case. If "policy and practice" has any relevancy, it is to the question of whether Judge Conger's successor is similarly excluding the public from his courtroom, of which no allegation has been made.

[3]Had we reached the merits of Simmons' and CCCFC's action, we would be called upon to determine whether to extend to civil divorce proceedings the constitutional safeguards surrounding the right of access established in *Richmond Newspapers*. There the Court found a *limited* right of access to judicial proceedings, not an absolute right: "[A] trial judge [may], in the interest of the fair administration of justice, impose reasonable limitations on access to a trial." 448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18. The Court required a balancing of the competing constitutional interests involved—the public's First Amendment interest in open proceedings as against the criminal defendant's right to a fair trial—and held that "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." *Id.* at 581, 100 S.Ct. at 2829. Simmons and CCCFC are seeking similar relief in this case, arguing that Judge Conger was constitutionally allowed to exclude persons from his courtroom only after conducting a *Richmond Newspapers* balancing of the interests involved.

In their complaint, Simmons and CCCFC specifically contend that

> Judge Conger did not make any order or finding balancing the interest of the public to attend and the interest of the husband to have a closed hearing. Judge Conger made no finding that the denial of public access served an important governmental interest and that there was no less restrictive way to serve that governmental interest.

In fact, the relief sought by Simmons and CCCFC was to enjoin Judge Conger "from excluding members of CCCFC and the general public from court proceedings *unless, after notice and hearing, he finds a proper, overriding interest in favor of closure.*" This seems to me to be an attack on Judge Conger's "exercise of his discretionary function," not a claim that the statutory grant of such discretion is invalid *per se.* Thus, I believe plaintiffs' claim that Judge Conger infringed their First Amendment right of access to judicial proceedings states a valid constitutional claim.[4]

Ultimately, although I believe that plaintiffs otherwise stated a valid claim, I do have reservations as to whether a "genuine and present controversy, not merely a possible or conjectural one" exists in this case. *See Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 111-13, 57 S.Ct. 96, 97, 81 L.Ed. 70

---

[4]Indeed, this constitutional claim is similar to that presented in *Nowicki v. Cooper,* 56 F.3d 782 (7th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996), in which a paralegal challenged a state family-court judge's policy of not allowing him to attend or record custody hearings because he was neither a party to the proceedings nor an attorney for either of the parties. The plaintiff claimed that the judge's actions, although authorized by Wisconsin law, Wis.Stat. §§ 757.70, 767.19(2), violated several federal rights. *Nowicki,* 56 F.3d at 783. The Seventh Circuit held that to the extent the plaintiff alleged that the judge's "policy deprives him of the limited right, ... held implicit in the First Amendment, to observe trials. ... his suit is not frivolous" and was erroneously and prematurely dismissed by the district court. *Id.* at 785 (citing *Richmond Newspapers,* 448 U.S. at 580 & n. 17, 100 S.Ct. at 2829 & n. 17).

(1936). Judge Conger is retired and no longer in a position to injure the plaintiffs or the public by excluding them from court proceedings, and his alleged "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983). Even if Judge Conger's "successors" are substituted as defendants in an attempt to save this action from mootness, I do not believe that the relief sought—injunctive relief—is warranted in this case. Injunctive relief against Judge Conger's successors is inappropriate because the threatened harm is merely speculative, i.e., we would have to assume that the successor judges would impose a similar "policy" of exclusion. [5] Notwithstanding that I think the plaintiffs brought a cognizable constitutional claim under *Richmond Newspapers* and its progeny, the permanent injunction

---

[5]We previously affirmed the dismissal of an action challenging Judge Conger's "policy" of excluding observers from child support hearings because the threatened injury was too speculative, and the case not ripe for adjudication:

> [A]ppellants' claims must be based on what they predict will happen as a result of Judge Conger's policy should they attempt, at some time in the future, to enter Judge Conger's courtroom during a support hearing. *This is plainly the type of hypothetical case that we should avoid deciding.* We do not generally decide cases based on a party's *predicted* conduct.... [W]e are faced only with an unofficial "policy" announced in an informal setting. *We simply cannot know whether Judge Conger will enforce this policy until he actually does so.*

> *Association for Children for Enforcement of Support, Inc. v. Conger,* 899 F.2d 1164, 1166 (11th Cir.1990) (citations omitted) (emphasis added). In the present case, it has not even been alleged that the successor judge has a policy of exclusion, much less that there is an impending threat of enforcement of such a policy.

should be vacated because this case no longer presents a "likelihood of substantial and immediate irreparable injury," an element requisite to any grant of equitable relief. *O'Shea v. Littleton,* 414 U.S. 488, 501-03, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974).