Orlando **GONZALEZ, Jr.** Plaintiff,

v.

Carla **MONTY, et al.,** Defendants.

No. 962279–CIV.

United States District Court,
S.D. Florida.

Feb. 11, 2000.

Orlando Gonzalez, Jr., Miami, FL, Pro se.

Steven Groves, Terence Martin, Randall C. Marshall, Office of the Attorney General, Eugenie Ramos, Sgt., Tom Sylvester, Jessica Gajus, Fort Lauderdale, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion in Limine, filed September 9, 1999 and Defendants' Motion for Summary Judgment, filed October 12, 1999.

THE COURT has considered the Motions, the pertinent portions of the record and is otherwise fully advised in the premises. Plaintiff, an inmate currently confined at the Everglades Correctional Institution, filed this civil action under 42 U.S.C. § 1983 alleging that his constitutional rights were violated when Defendants Carla Monty ("Monty"), Jessica Ga-jus ("Gajus"), Oneill Ramos ("Ramos") and Robert Vigneault ("Vigneault") directed the issuance of false disciplinary reports to him, refused his requests for medical treatment, used excessive force and transferred him to another correctional facility in retaliation for his having earlier filed another civil rights lawsuit against Dade Correctional Institution ("DCI") personnel. Defendants filed the instant Motion arguing that all of Plaintiff's claims fail as a matter of law. For the reasons stated below, Defendants' Motion is granted in its entirety.

### FACTS

Plaintiff is an inmate currently confined at Everglades Correctional Institution. Prior to Plaintiff's confinement at Everglades, Plaintiff was confined at DCI. A great deal of Plaintiff's confinement at DCI was spent in some type of restrictive confinement, principally for disciplinary issues. Deposition of Orlando Gonzalez ("Gonzalez Depo") at 13. However, when Plaintiff was first assigned to DCI, Plaintiff was placed in administrative confinement[1] due to the commencement of an investigation of Plaintiff's claims against other inmates. Affidavit of Oneil Ramos ("Ramos Affidavit") at ¶ 2. As a result of the investigation, Plaintiff was disciplined for lying to personnel and his confinement was changed to disciplinary. Id. at ¶ 3.

Thereafter, Plaintiff continued to be a disciplinary problem. Affidavit of Carla Monty ("Monty Affidavit") at ¶¶ 3, 4. Because of Plaintiff's almost constant disruptive, abusive and bizarre behavior, on April 24, 1996, Plaintiff's classification officer Carla Monty ("Monty") recommended Plaintiff's transfer to Tomoka Correctional Institution ("Tomoka"). Monty's transfer recommendation explained that Plaintiff had received five disciplinary reports in less than a month, four of which were issued while he was in disciplinary confine-

---

1. Administrative confinement restricts inmates to their cells but there is no loss of other privileges.

ment. Exhibit G to Defendants' Motion. In addition, Plaintiff had made false claims of extortion against other inmates for the purpose of manipulating the accused inmates' cell assignments. Id.

Between July 30, 1996 and August 11, 1996, Plaintiff filed numerous grievances seeking a reversal of the decision to transfer him and a change in his classification officer. Exhibits J–M to Plaintiff's Reply and Opposition to Defendants' Motion for Summary Judgment ("Response").[2] Plaintiff claimed that Monty was recommending his transfer simply because she did not like him. Id. On August 7, 1996, DCI's Superintendent advised Plaintiff that his grievances had been fully reviewed and his requests for a change in classification officer and reversal of the decision to transfer him to Tomoka had been denied. Exhibit J to Plaintiff's Response. Plaintiff was transferred to Tomoka on August 26, 1996.

Prior to Plaintiff's transfer, Plaintiff received significant psychiatric and medical attention.[3] Deposition of Orlando Gonzalez ("Gonzalez Depo") at 10, 21. Many of the medical contacts were in response to Plaintiff's claims of medical problems. Exhibit C to Defendants' Motion. For example, from July 26, 1996 to August 26, 1996, Plaintiff was seen by psychiatric and medical personnel almost daily and sometimes as much as two or more times during a single day. Id. Specifically, Plaintiff was examined by mental health and medical personnel four times on July 26, 1996. Id. Plaintiff was seen two times on July 29th, on August 2nd, 5th, 6th and three times on August 7th for myriad complaints. Id.

During the last visit on August 7th, medical personnel examined Plaintiff based on his complaints concerning his blood pressure and chest pain. Id. The attending nurse noted that Plaintiff had been examined in response to these same complaints earlier in the day and once again, Plaintiff presented with good skin

color, a regular pulse and no discernible respiratory difficulty. Id.

Plaintiff was examined on August 9th after again complaining of chest pain. Id. The attending medical personnel confronted Plaintiff about his history of declaring medical emergencies only to have an examination reveal findings inconsistent with the claimed medical problem. Plaintiff was advised that a disciplinary report would be issued based on his feigning. Id. In response, Plaintiff became verbally abusive and stated that he would "be over here every ten minutes now." Id. Despite Plaintiff's threat, Plaintiff was given medical attention on August 14th, 15th, 16th, 19th and 21st. Id.

On August 21, 1996 at 10:45 a.m., while Plaintiff was in disciplinary confinement on unrelated rules infractions, correctional officer Joseph Martinez ("Martinez") issued Plaintiff disciplinary report ("Disciplinary Report") # 419–96–0791. The Disciplinary Report was in response to Plaintiff's threat to "kick [Martinez'] fucking ass ... as soon as he opened [Plaintiff's cell] door" because Martinez refused Plaintiff's request for a sandwich. Exhibit B to Defendant's Motion for Summary Judgment (the "Motion"). At 10:52 a.m., Martinez issued Plaintiff disciplinary report ("Disciplinary Report") # 419–96–0790 when Plaintiff continued cursing and kicking his cell door. Exhibit A to Defendants' Motion. Both Disciplinary Reports were investigated.

In the course of the investigations, Sgt. Charles Banton ("Banton") completed a written statement that he witnessed Plaintiff's disorderly behavior. Exhibit A, B to Defendants' Motion. Plaintiff also completed a written statement in which he denied the substance of the Disciplinary Reports, claimed that Banton was not working on the day of the incident and therefore could not have witnessed it and claimed that Sgt. Carlos Lozano ("Loza-

---

2. Plaintiff did not want to be transferred to Tomoka because it was located seven hours farther away than DCI from his hometown and family. Gonzalez Depo at 53.

3. Plaintiff testified that during his confinement at DCI he was prescribed Prozac and a few other psychiatric drugs. Gonzalez Depo at 26.

no") directed Martinez to file the allegedly false Disciplinary Reports. Id.

After a disciplinary hearing conducted by CPO V.A. Powell ("Powell"), Plaintiff was found guilty of the acts supporting both Disciplinary Reports. Id. Plaintiff was assessed a loss of 60 days of good time credit and 30 days in disciplinary confinement for both Reports. Id. The 30 days of disciplinary confinement for each Report was to be served consecutively with the disciplinary confinement Plaintiff had already been assessed for other infractions. Id. Plaintiff appealed and as a result, Disciplinary Reports 419–96–0790 and 419–96–0791 were overturned.

## LEGAL STANDARD

The procedure for disposition of a summary judgment motion is well established. Summary judgment is authorized only when

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the nonmovant. *Id.*

The party opposing the motion may not simply rest upon mere allegations or denial of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 999 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts but disagree about the inferences that should be draw from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly support the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the nonmoving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## LEGAL ANALYSIS

■ As an initial matter, the Court agrees with Defendants' argument that to the extent Plaintiff asserts his § 1983 claims against Defendants' in their official capacity, such claims are barred. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)(holding that the Eleventh Amendment bars § 1983 official capacity suits

against state officials); *Simmons v. Conger,* 86 F.3d 1080 (11th Cir.1996)(citing *Will v. Michigan Dep't of State Police* ). Accordingly, the Court will grant the Motion for Summary Judgment as to all claims to the extent said claims are pressed against Defendants in their official capacity and will analyze the claims against Defendants in their individual capacity only.

### I. Section 1983 Claims

#### A. Disciplinary Reports

■ Plaintiff claims that Defendants Monty, Vigneault, Ramos and Gajus violated his civil rights under the Fourteenth Amendment's Due Process Clause in violation of § 1983 because Defendants were responsible for the issuance of three overturned disciplinary reports (the "Disciplinary Reports") to him. Defendants correctly concede that such a claim may be cognizable under § 1983 if the Reports resulted in the lengthening of Plaintiff's term of incarceration or the suffering of atypical and significant hardship. *See Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). However, Defendants argue that Plaintiff's claim fails because Defendants were not involved with the issuance of two of the Disciplinary Reports and Plaintiff did not suffer atypical and significant hardship as a result of the remaining Report.

With respect to the first argument, Defendants assert that the record evidence fails to demonstrate that any of the Defendants were in any way responsible for the issuance of two of the Disciplinary Reports, Reports # 419–96–0790 and # 419–96–0791. Thus, the Defendants cannot be held liable for any alleged constitutional deprivation suffered as a result of the two Reports.

■ With respect to Disciplinary Report # 419–69–0790, a careful review of the record reveals that none of the Defendants are listed as the filing or witnessing officer or as the officer in charge of the resultant disciplinary hearing. Instead, the record reflects that the only correctional officers involved in the issuance of this Disciplinary Report are Martinez, the officer who filed the Disciplinary Report, Sgt. Banton, a witnessing officer, and Powell, the officer in charge of the subsequent disciplinary hearing.

Moreover, the record reveals that in the course of the investigation of this Disciplinary Report, Plaintiff completed a written statement in which he claimed that Sgt. Carlos Lozano wrongfully directed the filing of the Disciplinary Report. Unlike Plaintiff's assertions throughout this litigation, Plaintiff did not claim that any of the Defendants were responsible for or instigated the filing this Report.

Similarly, with respect to Disciplinary Report # 419–96–0791, a careful review of the record reveals that the incident that gave rise to this Report and Report # 419–96–0790 occurred only seven minutes apart and involved the same filing and witnessing officers as well as the same disciplinary hearing officer. Moreover, Plaintiff again completed a written statement claiming that Sgt. Lozano directed the filing of this Disciplinary Report.

Nevertheless, in his opposition memorandum, Plaintiff asserts that Defendants Ramos and Monty are responsible for the Disciplinary Reports. Plaintiff offers nothing with respect to Defendants Gajus and Vigneault.

Specifically, Plaintiff asserts that on the day the Disciplinary Reports were issued, he saw Ramos talking with Martinez and pointing in his direction. Plaintiff further asserts that "Monty was always in charge of every one of Plaintiff [sic] disciplinary hearings." These mere assertions, which conflict with the competent record evidence, are insufficient to establish a genuine issue of fact as to Defendants Monty's and Ramos's participation in the Reports. Consequently, the issuance of Disciplinary Reports # 419–96–0790 and # 419–96–0791 cannot serve as the basis for Plaintiff's § 1983/Due Process claim against the Defendants.

With respect to Disciplinary Report # 419–96–0708, Defendants note that Plaintiff has previously claimed this Report was initially overturned, but that upon rehearing, it was affirmed. Defendants argue that consequently, Plaintiff's claim based on this Report is barred because, if established, would impermissibly imply the invalidity of the disciplinary proceeding and its result. *See Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

In his opposition memorandum, Plaintiff asserts that this Disciplinary Report was overturned again upon his second appeal and therefore his claim based on this Report is not barred by *Heck* and *Edwards.* Moreover, Plaintiff asserts that this Disciplinary Report both lengthened the term of his incarceration and caused him to suffer atypical and significant hardship. The record is devoid of any competent evidence regarding the final status of this Disciplinary Report. Even assuming the Report was finally overturned however, the record does not contain evidence from which a reasonable jury could find that Plaintiff suffered the requisite injury.

### 1. Lengthening of Plaintiff's Term of Incarceration

Defendants do not address Plaintiff's argument that the Report resulted in the loss of good time credit and therefore lengthened the term of his incarceration. Defendants instead contend that Plaintiff does not claim that his term of imprisonment was altered. However, a review of the opposition memorandum as well as this Court's September 30, 1998 Order reveal that Plaintiff consistently has made such a claim.

Nevertheless, in light of Plaintiff's position that the Disciplinary Report "was overturned, expunged, [and] invalidated," the loss of good time credit must have been similarly overturned. The record is devoid of any evidence that despite the reversal of the Disciplinary Report, the loss of good time credit was not similarly reversed. Thus, Plaintiff has failed to establish that his term of incarceration has been lengthened as a result of the Report.

### 2. Atypical and Significant Hardship

 Similarly, the record is devoid of any evidence that Plaintiff suffered the requisite hardship as a result of this Disciplinary Report. To establish a § 1983/Due Process claim with respect to discipline, the evidence must demonstrate that the discipline imposed "atypical and significant hardship on the [plaintiff] in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293. Plaintiff offers nothing in the way of explaining how the remaining, overturned Disciplinary Report caused him any hardship. Instead, Plaintiff merely offers the conclusory assertion that the Report caused him atypical and significant hardship. *See Brooks v. DiFasi,* 112 F.3d 46 (2nd Cir.1997)(vacating the district court's summary judgment in light of court's failure to address in its analysis the lengthiness and conditions of disciplinary confinement as compared to the confinement of the general prison population). In finding that the evidence is insufficient to establish that Plaintiff suffered atypical and significant hardship in relation to ordinary prison life, the Court is mindful that Plaintiff may have been initially assessed days in confinement in addition to a loss of good time credit for the acts giving rise to this Disciplinary Report.

In this regard, the Court notes that Disciplinary Report # 419–96–0708 is not in the record. Giving every reasonable inference to Plaintiff however, the Court is willing to assume that like the other two Disciplinary Reports, Plaintiff was assessed days in disciplinary confinement as well as a loss of good time credit. However, the record is devoid of any evidence that Plaintiff actually served the days assessed. In fact, the record establishes that upon first being confined at DCI, Plaintiff was placed in administrative confinement pending an investigation of Plain-

tiff's complaints against other inmates. As a result of the investigation, Plaintiff was disciplined for lying to personnel and his confinement was changed to disciplinary. Due to multiple rule infractions and resulting disciplinary reports, as well as a psychiatric assessment of Plaintiff, Plaintiff remained in restrictive confinement.

The evidence concerning Disciplinary Reports # 419–96–0790 and # 419–96–0791 reveals that because Plaintiff had received a number of previous disciplinary reports, the disciplinary confinement assessed was to be served consecutively. In fact, Plaintiff had a history of receiving disciplinary reports while already in disciplinary confinement. In the absence of any evidence to the contrary, it is unreasonable to assume that Plaintiff actually served the days assessed for Disciplinary Report # 419–96–0708 before it was overturned because Plaintiff was already in restrictive confinement for numerous other disciplinary reports.

■ Even assuming Plaintiff served the disciplinary confinement days assessed, the evidence is insufficient to establish that such confinement constitutes "atypical and significant hardship *in relation to the incidents of ordinary prison life*." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293 (finding that the defendant's segregated confinement did not present the type of sufficiently atypical and significant deprivation in which a liberty interest might be found). The record is devoid of any evidence that the conditions of disciplinary confinement at DCI are in any significant way different from the conditions imposed upon inmates in DCI's administrative, protective or medical confinement. *Id.* Thus, the evidence is insufficient to establish that Plaintiff suffered the type of hardship cognizable under the Due Process Clause and § 1983. Consequently, the Court will grant the Motion with respect to this claim.

## B. Denial of Medical Treatment

Plaintiff also asserts a § 1983/Eighth Amendment claim against Defendants Ramos and Vigneault based on their alleged deprivation of medical care on August 1 and 2, 1996 for Plaintiff's claims of heart problems and asthma. Defendants argue that Plaintiff's claim fails because he received medical treatment continually during the period from July 26 to August 26, 1996. Defendants further argue that the record evidence establishes that not only did Plaintiff not have serious medical needs during this period but that during this period, Plaintiff repeatedly declared medical emergencies later found to be nonexistent.

■ To establish a § 1983/Eighth Amendment claim based on the denial of medical care, the record must establish that such denial involved a "serious" medical need. *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1186 (11th Cir.1994) (finding delay or denial of "superficial, nonserious physical conditions" does not rise to the level of a constitutional deprivation). The record must also support a finding that the defendant's denial or delay of treatment was done with deliberate indifference to the inmate's serious medical needs. *Brown v. Hughes,* 894 F.2d 1533, 1537–38 (11th Cir.1990).

Plaintiff appears to abandon his claim with respect to Defendants's alleged refusal of medical treatment on August 2, 1996. Nevertheless, the undisputed evidence reveals that Plaintiff was examined by DCI's medical personnel on August 2, 1996 at 1:30 p.m.

With respect to Plaintiff's claim that he was denied medical attention on August 1, 1996, Defendants do not dispute that Plaintiff was not taken to the medical department on August 1st, but rather that Plaintiff had been taken to the medical department repeatedly in the days immediately before and after August 1st only to have medical personnel determine that Plaintiff was feigning.

■ The undisputed evidence demonstrates that not only was Plaintiff given medical attention on August 2, 1996 but Plaintiff was also seen on July 26th, twice

on July 29th, August 5th, 6th and three times on August 7th for myriad complaints. During the last visit on August 7th, the attending medical personnel noted that although Plaintiff complained about his blood pressure and chest pain and had been seen for those complaints earlier in the day, Plaintiff presented with a regular pulse and no discernible respiratory difficulty. Plaintiff was again given medical attention on August 9th after complaining of chest pain. The attending medical personnel confronted Plaintiff about his history of declaring medical emergencies only to have an examination reveal findings inconsistent with the claimed medical problem. The medical personnel advised Plaintiff that a disciplinary report would be issued based on these incidents. Plaintiff then became loud and verbally abusive and threatened that he would "be over here every ten minutes now." [4] Despite Plaintiff's threat however, Plaintiff was given medical attention on August 14th, 15th, 16th, 19th and 21st. The undisputed evidence establishes that even assuming medical treatment for Plaintiff's claim of medical problems on August 1st was delayed until his visit on August 2nd, the delay does not rise to a constitutional deprivation as Plaintiff did not have any serious medical need. *Hill*, 40 F.3d at 1186.

Plaintiff counters that the numerous medical contacts are insufficient to preclude his claim because many of them took place during "confinement nurse-check rounds" rather than visits to the medical department. Even assuming the medical treatment was conducted in Plaintiff's cell rather than the infirmary, this alone, particularly in the absence of a claim that the treatment was deficient, is not sufficient to support a § 1983/Eighth Amendment claim. *See Hamm*, 774 F.2d at 1575 (find-

ing detainee's medical care was sufficient where detainee's complaint was essentially about the mode of treatment and the record was devoid of evidence the treatment provided was deficient). Thus, the evidence is insufficient to establish the existence of any factual disputes with respect to Plaintiff's § 1983/Eighth Amendment claim based on denial of medical treatment. Consequently, the Court will grant the Motion with respect to this claim.

### C. Use of Excessive Force

Plaintiff also asserts that on April 30, 1996, Defendants Ramos and Vigneault removed him from his cell in handcuffs and kicked and punched him about his head and body while Monty and Gajus watched. Defendants contend that the claim is meritless as the undisputed record evidence demonstrates the Defendants were not on duty on April 30, 1996. Specifically, the record contains the DCI work schedule for Plaintiff's area of confinement. The work schedule establishes that the Defendants were off on April 30, 1996.[5]

In opposition, Plaintiff now asserts that he is not sure the incident took place on April 30th and cannot remember when it actually took place. However, throughout this litigation, Plaintiff has asserted that the subject beating took place twenty-four hours before he was transferred from DCI to the South Florida Reception Center ("SFRC"), an assertion he does not apparently abandon for purposes of opposing Defendants' Motion for Summary Judgment. Nevertheless, the record supports the fact that if the incident took place, it occurred on April 30, 1996.

As found by Magistrate Judge Sorrentino in her August 20, 1998 Report and Recommendation,[6] DOC records confirm

---

4. To dispute Defendants' assertion that Plaintiff did not have any serious medical need, Plaintiff points to the notes concerning his medical treatment on July 29, 1996. Plaintiff contends that the notes indicate that the results of an EKG establish acute heart problems thereby supporting his assertion that he had legitimate health needs. However, the July 29, 1996 medical notes state: "Incidental

notes, EKG done—— No acute heart problems are shown."

5. *See* Affidavit of John Thompson; Exhibit F to Defendants' Motion.

6. The undersigned affirmed Magistrate Judge Sorrentino's Report and Recommendation by Order dated September 30, 1998.

that Plaintiff was transferred to the SFRC on May 1, 1996. Thus, based on that portion of the claim still maintained by Plaintiff, the alleged beating must have taken place on April 30, 1996. However, as the record reflects, the Defendants were not on duty on that date. Consequently, the Court will grant the Motion with respect to this claim.

### D. Retaliatory Transfer

■ Finally, Plaintiff asserts a § 1983 claim against Defendant Monty for transferring him to Tomoka allegedly in retaliation for his having earlier filed Case No. 96–983 in which she and other DCI officers were named as defendants. Defendants do not dispute that an inmate may state a § 1983 claim where he has been transferred in retaliation for the exercise of constitutional rights cognizable in a civil rights suit for damages. *See e.g., Adams v. Wainwright*, 875 F.2d 1536 (11th Cir. 1989). However, Defendants argue that this claim is meritless because Monty was not aware of Plaintiff's lawsuit before she recommended Plaintiff's transfer to Tomoka and therefore could not have done so in retaliation for Plaintiff's lawsuit.

■ A review of the file in *Gonzalez v. Pardue, et al.*, 96–983–CIV–FERGUSON reveals that Plaintiff filed the action on April 12, 1996. On May 21, 1996, Plaintiff filed an Amended Complaint. On September 6, 1996, Magistrate Judge Sorrentino issued a Report and Recommendation recommending dismissal of the action for Plaintiff's failure to pay the filing fee or an appropriately documented motion to proceed *in forma pauperis*. The action was dismissed on November 12, 1996. The record is devoid of any evidence that Monty or any of the other defendants were served with process.

Plaintiff points to several grievances he filed in August 1996 in which he seeks a reconsideration of his transfer to Tomoka as evidence that Monty was aware of the lawsuit before she recommended his transfer. However, a careful review of the grievances reveals that the only time

Plaintiff mentioned his having filed a lawsuit was in a grievance (the "Grievance") filed on August 11, 1996. Giving Plaintiff every reasonable inference that Monty was aware of the substance of the Grievance, the Grievance does not indicate that the lawsuit involved Monty. Moreover, the undisputed evidence demonstrates that Monty recommended Plaintiff's transfer for multiple rule infractions and disciplinary reports on April 24, 1996, almost four months before the Grievance was filed. Thus, the record lacks any evidence that Monty was aware of, and therefore recommended Plaintiff's transfer for multiple rule infractions and disciplinary reports on April 24, 1996, almost four months before the Grievance was filed. Thus, the record lacks any evidence for his having filed a lawsuit against her. Consequently, the Court will also grant the Motion as to this claim. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion is GRANTED as to all of Plaintiff's claims against Defendants in both their individual and official capacities. It is further

ORDERED AND ADJUDGED that Defendants' Motion in Limine is DENIED as moot.

### ADMINISTRATIVE ORDER CLOSING CASE

THIS CAUSE is before the Court upon *sua sponte* review of the file.

It is hereby ORDERED AND ADJUDGED that this case is CLOSED for administrative purposes. it is further

ORDERED AND ADJUDGED that all pending motions in the case are DENIED AS MOOT.

### FINAL JUDGMENT

Pursuant to Fed.R.Civ.P. 54 and this Court's February 10, 2000 Order Granting Defendants' Motion for Summary Judgment, it is hereby

ORDERED AND ADJUDGED that Final Judgment is entered in favor of Defen-

dants Carla Monty, Jessica Gajus, Oneill Ramos and Robert Vigneault as to all counts of Plaintiff's Complaint.